Good morning, your honors, and may it please the court. My name is Daniel Tolman, and I represent the petitioner, Odalis Chicas-Machado, in this case. On appeal, the petitioner raises three issues for review by this court. The first is whether the Board of Appeals incorrectly affirmed the immigration judge's rejection of her proposed particular social groups, which were those who refused to comply with the orders of Salvadoran gangs for religious or moral reasons, and Salvadorans who filed police reports against the gangs. The second issue raised is whether the board incorrectly affirmed the immigration judge's finding that the petitioner did not establish a nexus between the persecution she feared and her religion. And the final issue is whether the board incorrectly affirmed the immigration judge's finding that the persecution the petitioner fears would not be with the consent or acquiescence of the government of El Salvador. I'd like to begin with the first issue which revolves around the issues of particularity and social distinction. Do you regard the first and second issues as discrete? I do, your honor, because the court would like to address them in whatever way the court would like, but I think the first issue revolves around the parts of what makes a particular social group. Group one was rejected on particularity. Group two was rejected on social distinction. And the second issue, I think, revolves more around solely the issue of nexus, which is aside. Once you establish that a particular social group exists, or a protected trait such as religion, political opinion, race, nationality, then you have to establish the nexus. You have to show that that is one central reason. Right, but what I was asking you, if you, could a court reject your nexus arguments and still find with you on your second argument? Well, your honor, the nexus, I'm sorry, I don't follow. Well, I thought your first argument was two not valid, could it still find with you in your second argument? Yes, and that's the nexus issue. So to find, yes, that's why I was confused. I'm sorry, your honor. Well, I was confusing you. So the first group was rejected on particularity grounds. Actually, can I ask you, I'm sorry, another question about the relationship between those two claims. If the other, whether there's an alternative, would you, I'm trying to figure out, if you were to prevail on nexus to religion, does it matter whether there are also alternative grounds, alternative particular social groups where you might be able to show a nexus? Well, your honor, it could, and the reason is that the remedy in that case would be a direct standard for nexus between the religion and the file. But why would you do that if you had already made the conclusion with respect to the second argument? Well, that's what I'm saying. The case would be remanded back to the board. What if somebody agreed that the record compels a finding of nexus to the protected ground of religion? Then would it matter whether there were also alternative particular social groups at issue? I suppose that it would matter just to avoid, and here's, let me just preface this by saying. Well, but you're going to have a nexus regardless. Correct. In a particular social group, you have to have a nexus to that. Right. Religion or race, there has to be a nexus between whatever happened and those factors. You have to have a nexus either way. Correct. But I don't think that's the other things. An asylum is a discretionary form of relief. The agency didn't really reach the issue of whether she merited it in the exercise of discretion. So it would have to go back to the agency anyway, and if it's going back to the agency. Here's my question, and then I will leave this alone. I'm sorry, your honor. This is all hypothetical. Yes. If there were a decision from this court sending this case back to the BIA on the asylum claim and saying this record compels the conclusion that whatever actions were taken against your client, one central reason why they were taken against her and not someone else is religion. That's, we have satisfied nexus to a particular social group. Would it in some way be advantageous to your client if also that decision from this court said, and also, by the way, there are two other particular social groups that you ought to look at and see whether there's a nexus or is one sufficient? Thank you for clarifying, your honor. In that hypothetical scenario, I think it would not matter because then the remand order would say, now just figure out discretion and make a decision. So eligibility has been established. Well, you'd still have to figure out was the conduct that was directed at your client, did it rise to the level of persecution, was the government unable or unwilling to control it, but the nexus to a particular social group would be resolved. Your honor, if persecution still needed to be established on remand, then I think the particular social groups would matter because different conduct is sometimes describable with different reasons. So returning to the first group, which was those who refused to comply with the orders of Salvadoran gangs for religious or religious reasons, the board found that that group was not sufficiently particular, that it was amorphous. What their actual language was is that it could encompass a large and diverse group of El Salvadorans, and that could be taken a couple of ways, and I think it's interesting that this arises in the context of particularity because the language that the board, basically the language that is used to define a group is crucial. And if you have too many words, you fail on one ground. If you have too few, you fail on another. So you're jumping from one foot to the other. So I think it's interesting that the board's language could encompass a large and diverse group of El Salvadorans with regard to particularity can refer to various things. I think what they're getting at is what this court talked about in Herrera-Martinez earlier this year, as far as the words that the court used were breadth, I think, which is a little more specific. But when I read could encompass a large and diverse group of El Salvadorans, I think, well, so could homosexuals. But that would definitely be a particularized group that would encompass a large and diverse group of El Salvadorans. So the words that the board uses make it difficult to tell whether they're actually focusing on something else. So that's something that needs to be clarified and they need to better explain their reasoning. We used the example, what the IJ, the immigration judge, and the board went back to a lot was that essentially the reasons, the religious or moral reasons, that's where the ambiguity comes in. And as we argue in our brief, you know, even if 99 percent of the population of El Salvador opposes gangs, some might do it because they're afraid to get in trouble with their parents. Some might do it because it's not going to let them get into college. Some might do it because they don't want to get caught by the police. But then a subset of the population will do it for moral or religious reasons, whatever that religion is, whatever that morality is. But there's something internal about them that drives their opposition, or not their opposition, because in this case there's concrete action. There's refusal to cooperate. There's an approach and a refusal. So we've got the group of people who have been approached and refuse to cooperate, and then we have the reason why specifically. And I think that that's clear enough to meet the particularity standard. Okay, now maybe you can address the second, your second point. Yes, thank you, Your Honor. Salvadorans who file police reports against the gangs. What I think that this, and the board... I remember that as 1A. You know, one. Yes. I was interested in two. I mean, you have five minutes, so you can use that. Yes, I'm sorry, Your Honor. So for that group, essentially social distinction is the issue. I think that it's pretty well developed in the brief that what level of publicity is needed for cooperation with the police to become public for purposes of that. And again, we go back to the issue of the wording is so crucial in Herrera-Martinez. There was a discussion about that as well. And even in Respondent's brief, it says that essentially the sufficient. And this has come up before the court as well. But there's always been this element of that having to be public. And it's the added words that somehow affect the cognizability of the group. In HLSA, essentially, it focuses on that aspect. What social distinction is supposed to be is how outwardly people are perceived, which is almost like ocular visibility. And that's not obviously what social distinction is supposed to be. The fact that the petitioner's report became known to the gang a couple of days later indicates that it was something public. She was not secretly meeting with an officer by December 6th. They already knew about it. So unfortunately, the record does not tell us whether it was because she was telling people she went to the police or if it was because, as she claimed, the gang was following her and they saw it. But presumably, she went into the station through the front door. And if the gang is So moving on to the issue of religion and nexus, the petitioner suffered various forms of persecution. At one point in the transcript during cross-examination, the does not reflect what petitioner testified to in court, that she was harassed on her way to and from church. That's what brings her to the attention of the gang. Why was she harassed? Well, according to her, it was because she was a Christian, because she was an evangelical. She was out there preaching. I thought the record showed that because the location of the church gave whoever was there an eye view of where the police cars went and they wanted somebody who could tell them when the police were out and about. I don't believe it was. Well, that has something to do with why they attempted to recruit her. So it gets a little complicated because it's a mixed motive case, clearly. I thought that she said that they said that no one would suspect her because she goes back and forth to the church because she's religious. So it was not just her location, but her connection with the church. Correct. So that is one thing. But again, this is what makes her useful to them. But she also was very clear throughout the record is there is no dispute that she was told, we don't like you because you are evangelical. We don't like that you are out there telling young people not to do crimes. They also testified that they didn't care whether or not she was Christian. I'm glad your Honor brought that up because that came up in a specific context. And if nothing else, there's a reason to remand for that to be clarified. Once again, we go back to the could encompass a large and diverse group could be taken different ways. When I read the transcript, it's clear to me that what she's talking about is essentially they're saying, we're not going to not harm you because you're Christian. We don't care that you're Christian. We're still going to harm you. Not that that's not a reason that they're harming her. So it's almost as if they're taunting her faith. It's almost as one of those, you know, where is your Messiah now type declarations. So that could be taken differently. And I think that the judge and the board took it the other way. They took it to mean that, I mean, the persecutor is never going to just outright tell you. I don't even see how you could take it two ways. I mean, what she says is they told me it didn't matter that I was Christian. They could do whatever they wanted to do with me anyway. Like, I don't actually see any way to take that the way the board took it. Well, Your Honor, yeah, exactly. The anyway at the end is what seals it for me. It's like, we don't care that you're Christian. We're going to hurt you anyway. So it's not, you know. Well, you were suggesting at one point we had to send it back to the board. Well, if we think that the board misinterpreted, we don't send it back. I understand, Your Honor. I mean, we don't send it back for them to make new findings. Yeah, I apologize, Your Honor. I guess I just got caught in the moment there. I wasn't expecting to be asked about the remand scenario. But in any event, just to wrap up that issue, as I was saying, persecutors don't generally tell their victims this is and this is not the reason why we're doing it. It's all drawn from context. And the context in this case, the record, shows that religion was one central reason why she was in this situation. So was her refusal to cooperate. There's a mixed motive, but one central reason was religion, and that is sufficient under this Court's precedent. Thank you very much. I see my time is expiring. Good morning. May it please the Court? My name is Kevin Conway. I'm appearing for the government. I'm going to, I don't know if the Court wants to follow in the same order that the three issues, or would that be less confusing? It doesn't matter to the Court. Do whatever you want. Thank you, Your Honor. The government contends that substantial evidence supports the finding that Ms. Chicas Machado was not persecuted on account of her religion. A persecutor has to prove that religion was one central reason for her persecution. And consequently, in this case, Ms. Chicas Machado had to show that her religion was more than an incidental, tangential, or superficial or subordinate reason for the persecution. Yes, ma'am? Let me just sort of go right to what I think is the hard question here. So the BIA's own opinion says, here's why they persecuted her. They told her they wanted her assistance because no one would suspect she would be working with the gang based on her conduct with the church. I mean, isn't the BIA itself saying they picked her because her church membership and her religion would make her seem nonsuspicious? Well, what the board was saying, I believe, was that they chose her because no one would suspect her of helping the gangs. Right. Because of her religion. Well, because she had an association with the church, but not because necessarily of her religion. They weren't trying to overcome or change her or... That's not the question. Like, in our family persecution cases, you don't ask, are they trying to, like, make you renounce your family and join a different one? You just say, are they coming after you because of who you are related to? And even the board says they're coming after her because of her religion and her church affiliation. I guess I see a distinction between her religion and her beliefs, as far as that goes, and what the gangs wanted from her. And it was not anything to do with her religion or that she was Christian. We can reconcile that with our Nexus cases, which all are really clear about the fact that you don't have to hate the family, you don't have to hate the group. You may be doing this to recruit gang members, you may be doing it for money, but if the reason this person is the person in your crosshairs is some protected ground, that's enough to show Nexus. My understanding is that, well, I mean, my understanding of the boy's decision is that it was, they were looking, the gangs were interested in her for what they could provide to her, not because of her religion. Yes, she could have been any religion, she could have been any, it might have been any reason. She might have been working in a shop that overlooked the same area where... No, that I don't think is true, because they did think that, or she said, we don't have any evidence to the contrary, that they thought she wouldn't be suspected to. Also, that's what the board said. They didn't say because of the location. The board itself says no one would suspect she would be working with the gang based on her conduct with the church. So I just don't see how we can reconcile that part of the board's decision with our increasingly long line of Nexus cases. Well, I understand the board, I mean, the panel's position, but... I should phrase it as a question. Is there a way we can reconcile it? Well, that's what I, in my mind, yes, but you seem to disagree with my... So the only way you think we... I mean, I guess you haven't actually... How would we reconcile that with, say, Hernandez Alvarez, am I getting the name wrong? The one about the woman who was targeted by the gang because they want to recruit her son for gang membership. They don't hate her, they don't hate her family, they just want to recruit the son. But we hold the reason they went after her and not somebody else is because of her relationship to her son. And that's enough to show Nexus. Is there a way we can reconcile what the board said here with a case like that? I think the only way you can reconcile that is to look at the gang's ends and means. The only reason that they wanted her had nothing to do with her religion, other than the fact that there would be no suspicion on her because of her position. And that it had nothing to do with her religious beliefs, so to speak. I don't know if that is enough of a distinction for the court to make a decision on. With regard to the particular social groups, starting with those who refused to comply with the orders of Salvadoran gangs, for religious and moral reasons, the board found that the PSG failed on particularity grounds because of the phrasing, for moral or religious reasons, was an amorphous characteristic. I'm saying that this court has found that opposition or resistance to gangs is an amorphous characteristic providing neither an adequate benchmark for determining group membership nor embodying a concrete trait that would readily identify a person as possessing such a characteristic. In this case, the board found that what constitutes a religious or moral reason is just that. It's overbroad and subjective in and of itself. I know that the board, even though, I mean, the judge argues that the board misconstrued the standard to refer to the size and composition of the group instead of whether its members were sufficiently identified. Yes, the board did reference the size of the group, but what we're more concerned about were the imprecise parameters of the group, meaning for religious or moral reasons, because one can't tell what someone's religious or moral reasons are. Just so I make sure I understand the government's position, you agree that the size of the group is not the right question, but your argument would be that's not what the board was really relying on here. It's not the only thing to look at. I know that there is case law that says the size is not necessarily an indication for particularity, but the board said that in conjunction with other reasons for their finding. And the petitioner in their brief cited, too, the illustration of Catholics that was in Amaya v. Rosen. In that case, they had posited that Catholics was a particular social group, and that Catholics may vary widely in length of time. They have been in the faith. They have criminal involvement, which may have an impact on nexus, but not on particularity. Well, that example in this case is not applicable because a social group such as Catholics, without any other parameters, is clear who is in the group and who is not. In this case, if the purported social group had identified only those who refused to comply with the order of Salvadoran gangs, perhaps that would be enough to figure out who was in the gang and who was out. But now we have, as counsel has said, 99% of the population of South Salvador may oppose the gangs. But in this case, they have, you know, put on extra parameters, extra wording that makes it more difficult to find particularity in this case. As we argued in our brief, the terms for religious and moral reasons are not self-limiting and are more in line with the terms that this court has found to be amorphous, such as wealth in opposition to gangs. Americanization, criminal history, those are all amorphous characteristics that we think that these, for moral and religious reasons, fall under that same category. With regard to Salvadorans who file police reports against gangs, which the board found not cognitive because it lacks social distinction, the board noted that the gangs harm anyone they perceive to interfere with their criminal enterprise, that persons who file police reports are not in a substantially different position than anyone else who is perceived to be a threat to the gang. And there is no indication... Excuse me, is there any evidence in this record that her filing of police reports against the gangs was well known? There is not. Did she testify about that? She testified that she filed a police report, but there is no testimony as to whether she told any friends or relatives or anybody in the church that she had done so. Or that the abusers knew that? Did they know that? The gangs found out apparently two days later because they came and threatened her, and two days after she filed the report. There is no indication even in the record as to how she presented that report to the police. Counsel has posited that she walked in the front door, a very public act, but there's nothing in the record that indicates that's what actually happened. Well, but if they knew about it, I mean, maybe the group would be people who file reports against the gangs, which the gangs know about. That's a narrower group than people that file police reports about the gangs, right? Right, but we don't, I mean, that wasn't presented to the immigration judge or to the board as a social group in this case. We don't know, you know, and this court has ruled on the public nature of involvement with the police, such as testifying at trial, participating in a line-up, things of that nature. This is not that. Well, actually, you know. No, but we suggested that when you report and no one knows about it, that can't do anything. I don't know that we've ever reached the question of whether you report and then your abuser knows about the report, whether that's a different group. Do you understand what I'm saying? Yes, I do, and it would be a different group, but that's not a group that was pled in this case. Okay. As to Your Honor's point, the evidence of record does not support the inference that Ms. Chico Machado's friends, family, and society in general were aware that she had filed a report, or that people who file police reports against gangs necessarily are cognizable as a group because of the public nature of it. Is there any tension here between, and I guess I could ask your colleague this too, the party's positions on this police report issue and then what's being argued over on the cat side of things? Because if nobody knows that she filed this police report except for the police, and then the gang finds out, that does seem to indicate that the police are working with the gang, right? Do you know what I'm saying? If this were a sort of public knowledge, then there wouldn't really be much from which one could infer that the police in this case was actually working with the gang. But if in fact nobody knows about it except for the police officer, and then the gang finds out two days later, that does sort of lend credence to the argument over on the cat side of things that, at least in this case, someone's acquiescing in what's going on. Do you know what I'm saying? I understand what you're saying, but there's no evidence in the record that shows how the gang found out. If you're right that this is like a purely private thing, nobody knows about it except for her and the police, and then the gang found out, then I guess we actually can infer that it was from the police. Right, but then we're looking at this in the context of social distinction at this point. I mean, I suppose on the cat side we can discuss that then. But the social distinction requires that how this is viewed in the public, in the society in general, in question and whether or not this particular social group of people who file police reports. Maybe just a few people know and one of them told the gang. Right. I mean, we don't know how the gang found out and I guess the burden is on the petitioner to prove her case, prove their case as to all of the requirements for PSG to show a particular social group. With regard to the failure to demonstrate eligibility for cat protection, we have the petitioner reported, was first threatened on December 4th and reported the threat to the police at some point between the 4th and the 6th. On the 6th she received a threat from the gangs and then on the 16th she fled the country. There's no evidence to show, I mean, when she filed the police report with the police, the police said that they would look into the matter. There's no evidence that there was any follow-up by the petitioner with the police to see any steps that they had taken. There's no, she says that nothing was done, but she left the country 10 days later. So we don't know from that, from the 6th, from December 6th on, what if anything happened with the police's response to her report. So she hasn't shown that there is one, that the Salvadoran government was unable or unwilling to assist her or that they had not taken any steps to rectify or remedy her situation. The board acknowledged that there was corruption in the Salvadoran government but also noted that the government had taken steps to combat the gangs. There is case law that shows that the national government has attempted to alleviate the gang problems, have been unsuccessful in some respects, perhaps successful in other steps. And for those reasons, we believe that she has failed to show her eligibility for cat protection. And I do see that you addressed the cat protection in your brief, but I wasn't sure that cat relief was requested by the appellant here. It was. Yes? I mean, it's kind of intermixed with... Okay, well, they can show me where it is in their brief. Okay. But you're conceding it was. Fine. Okay. Yes, it's intermixed with well-founded fear, I think. It's in the later stages of the brief. Okay, thank you. So what impact on the claims here does the findings by the IJ have that there was failure to produce evidence on the ability to relocate? How does that factor in? I don't believe it does because the board did not address that issue in its decision. The board decided the cat issue on other grounds and didn't address the failure to relocate or to attempt to relocate. If there are no other questions, then the government will rest on its brief. Thank you very much. I see where you made the cat argument. Thank you, Your Honors. I'm just going to focus on some of the things that were brought up during the government's argument and I'll walk my way backwards. Regarding the cat issues, since we're talking about that right now, yes, it was requested and it was argued, but in this case it seems pretty asylum is still obviously the petitioner's primary objective. However, regarding what happened with the police, there may not be evidence that the police did or didn't do something, but what there is evidence of is that something did happen after she went to the police. Two days later, the gang came back and according to her, she knew that they knew about it because they told her exactly what was in the report that she filed. Counsel, I really do have a question, sort of the same question I asked our colleague, but it seems like a slightly more salient issue for you. You're arguing over on particular social groups that people who file police reports are a distinct social group because everyone knows when people file those reports. If that's true, I don't see how we can infer that it was the police who told the gang that she filed the report. Correct, Your Honor. However, as I argued during my opening argument, I think that it's the act of filing the report. So, and actually I'll just jump back to the second part of it because it interrelates. When we're talking about particular social groups and things like social distinction and things like that, in particularity, what we're really talking about isn't the person specifically. That's an issue of showing that you belong in the group. It's more about the definition of the group. So, if I tell somebody, anybody, if I tell them, you know, like, my cousin filed a police report against organized crime, that's perceived as a segment of society. People who file police reports against organized crime. You can hear about a neighbor. You can watch a movie about it. You can read about this in the paper. It's something that is perceived within society. You don't have to know the person. And it's a different question to say, well, did they actually do it or was it really organized crime? But it's the idea of that group that society recognizes. And that's really what we're getting at with social distinction and particularity. So, that's how I reconcile those two things. Our argument is that the way that even if it was just the police that knew about this, then, yes, I mean, it is a pretty strong indication. I agree that, or it would be a very strong indication that the police are, in fact, as the petitioner alleged in the country conditions evidence showed, that the police are colluding with the gangs, at least at the local level. But at the same time, it doesn't change the fact that she is a member of that subset of society who filed police reports against gangs. So, that's how I reconcile the two. The only other thing really is, see, when I work backwards, I lose my train of thought, so I apologize. With regard to the other group, as the government said, that the extra parameters added relating to moral or religious objection, or moral or religious reasons being why the person refuses to cooperate, it is not an excessive number of additional parameters. And in this case, I think that it actually makes the group more particular. Again, we're referring to subsets of society, and I told you earlier various examples of why somebody might oppose the gangs. This further narrows that group. So, the addition of those words, and those are not amorphous words. You don't have to know which religion it is. You still know what opposition on religious grounds are. So, it isn't the same as youth or wealth, which are purely subjective. Morality and religion are things that are clearly defined to the extent that, in this case, they add particularity. They don't detract from it. Before you sit down, just a minute. Yes, Your Honor. Back on the cat claim. All the relief that you ask is that we reverse the board's decision and remand for additional proceedings under the correct legal standard. What might that mean? Sorry, Your Honor. I didn't get to the cat section during my opening argument, and I apologize that I'm over my time, if you'll allow me to respond. Well, in this case, they should evaluate the cat claim, and I guess it shouldn't have been a correct legal standard, perhaps as a poor choice of words, but the fact that measures have been taken, and it's public knowledge about the situation there now since March under the new president, broken truce with the gangs and everything that's happened. And I think that the claim should be evaluated under a correct appreciation of the situation in place and the fact that there is indeed police collusion and acquiescence in what the gangs do. Thank you, Your Honors. Thank you. Do we have further questions? No. Thank you very much. We will ask the clerk to adjourn court. This Honorable Court stands adjourned. Senator Dac, Godspeed to the United States and this Honorable Court.
judges: Diana Gribbon Motz, G. Steven Agee, Pamela A. Harris